# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| CONTINENTAL CASUALTY COMPANY, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. No. 18-461WES |
| | : | |
| JOSEPH A. CARAMADRE, PAULA | : | |
| CARAMADRE, JOHN W. MITCHELL, | : | |
| ESQ., EDWARD C. ROY, ESQ., MELISSA | : | |
| LARSEN, ESQ., UNITED STATES OF | : | |
| AMERICA, WESTERN RESERVE LIFE | : | |
| ASSURANCE COMPANY OF OHIO, and | : | |
| TRANSAMERICA LIFE INSURANCE | : | |
| COMPANY, | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

PATRICIA A. SULLIVAN, United States Magistrate Judge.

This interpleader action seeks to divide up $250,000, the proceeds of the settlement ("Settlement Fund" or "Fund") of an attorney malpractice action brought in the Rhode Island Superior Court by Defendant Joseph A. Caramadre against the attorneys who initially represented him in defending criminal charges based on a fraudulent scheme to obtain money from insurance companies and bond issuers to which he subsequently pled guilty. Plaintiffs are the legal malpractice insurers who are responsible to pay the Settlement Fund – Continental Casualty Company ("Continental") and now-dismissed-Plaintiff Navigators Insurance Company ("Navigators"). Because the claims to the Fund vastly exceed its value, the malpractice insurers initiated this interpleader action pursuant to 28 U.S.C. §§ 1335, 1397 and Fed. R. Civ. P. 22 and joined all claimants as defendants. Consistent with the character of the case as an interpleader and pursuant to Fed. R. Civ. P. 67, Plaintiffs have deposited the amount of the Settlement Fund, a total of $250,000, in the Court registry. The Court has enjoined any action against them in

connection with the Fund and dismissed one of them (Navigators) from the case. Cont'l Cas. Co. v. Caramadre, C.A. No. 18-461WES, 2019 WL 3577775, at *1, *3 (D.R.I. Aug. 6, 2019), adopted, 2019 WL 4059840 (D.R.I. Aug. 28, 2019).

Now pending are the dueling motions for summary judgment of four distinct groups of claimants who are joined as Defendants.

The first group comprises the three attorneys – John W. Mitchell, Melissa Larsen and Edward C. Roy, Jr. (collectively, the "Attorneys") – who represented Mr. Caramadre in prosecuting the legal malpractice case and in procuring the Settlement Fund. Based on their Attorneys' charging liens totaling $288,422.13, plus statutory interest[1] (a total that exceeds the value of the Fund), calculated pursuant to the contractual terms of their engagement, they argue that they are entitled to all of the Fund because their charging liens have "super-priority" pursuant to 26 U.S.C. § 6323(b)(8).

Second is the United States; it asserts priority over all claimants other than the Attorneys, who it concedes have super-priority, but extending to far less than what the Attorneys seek. Its claim is based on the amended judgment in Mr. Caramadre's federal criminal case, which imposed a restitution obligation to pay the victims of the scheme (insurers and bond holders) in excess of $46 million. United States v. Caramadre, CR. No. 11-186 S, 2014 WL 409336, at *1, *5 (D.R.I. Feb. 3, 2014), aff'd, 807 F.3d 359 (1st Cir. 2015).

In the third group are two affiliated insurance companies, Western Reserve Life Assurance Company of Ohio and Transamerica Life Insurance Company (collectively, "Transamerica"); its claim to the Fund derives from its status as two of the dozens of victims of Mr. Caramadre's fraud. Collectively, it claims entitlement to restitution in the total amount of

---

[1] Only Attorney Mitchell asks for statutory interest, arguing that it is part of an attorney's charging lien.

$2,012,371.49. It alleges that its assistance to the United States in the criminal investigation should give it priority over other victims.

The fourth claimant is Paula Caramadre, the now-divorced spouse of Mr. Caramadre. Relying on United States v. Harris, 79 F.3d 223, 233 (2d Cir. 1996) and other cases from the 1990s, she argues that she is entitled to whatever remains of the Fund after the Attorneys are properly paid because the Caramadre, 2014 WL 409336, at *5, restitution order should be vacated based on the Court's failure to calibrate it to consider "the financial needs and earning ability of the defendant and [his] dependents," Harris, 79 F.3d at 233, pursuant to 18 U.S.C. § 3664(a) and (f)(2)(C). See United States v. Harris, 60 F. Supp. 2d 169, 177 (S.D.N.Y. 1999) (post-remand, in setting restitution, district court considers needs of spouse and minor children as reflected in family court order). Once the restitution order is properly vacated and reset with due consideration to her needs as a former spouse entitled to alimony, she contends that the United States and Transamerica will lose their priority over her claim.[2]

Not asserting a claim is Mr. Caramadre himself, who acknowledges the entitlement of the Attorneys to the entire Fund; he considers their fees to be appropriately reflective of hard work, well-earned and consistent with the terms of his engagements with them.

These claims were initially filed pursuant to an order entered at the Fed. R. Civ. P. 16 conference, which directed all claimants to submit "Motions for Summary Judgment or Briefs in Support of Claim to the Proceeds" by October 22, 2018. Text Order of Sept. 5, 2018. In compliance, Attorneys Mitchell and Larsen filed a joint motion for summary judgment and Attorney Roy submitted a brief in the form of an affidavit (ECF Nos. 39, 42), while

---

[2] In her initial brief, Ms. Caramadre also argued that she had contributed to Mr. Caramadre's legal fees in defense of the criminal case. However, her final divorce judgment awarded her the exclusive use and possession of the family home in consideration for her payment of such fees. ECF No. 46-1 at 1. This aspect of her presentation will not be addressed further.

Transamerica and Ms. Caramadre filed briefs (ECF Nos. 38, 40). The United States submitted nothing.

After what had been filed as motions were referred to me for report and recommendation, a hearing was held on August 23, 2019, following which the Court clarified that all filings by all claimants would be treated as referred motions for summary judgment. Also based on the hearing, the Court ordered the Attorneys to supplement their submissions with information sufficient to permit the Court to determine the amount of reasonable compensation secured by their charging liens (and allowed other claimants to object). Text Order of Aug. 23, 2019. The Court also permitted the United States provisionally to file an out-of-time motion for summary judgment, as well as to move for leave to make such a filing despite its apparent waiver of its claim to the Settlement Fund.

The motion of the United States (ECF No. 51) to file its out-of-time summary judgment motion was referred to me for determination under 28 U.S.C. § 636(b)(1)(A) and has been granted by a memorandum and order that issued today. ECF No. 81. The remainder of what is pending are motions for summary judgment (or filings that are being treated as motions for summary judgment) to determine the fate of the Fund, based on a largely undisputed factual record. These are ECF Nos. 38 (Transamerica), 39 (Attorneys Mitchell and Larsen), 40 (Paula Caramadre), 42 (Attorney Roy), 52 (United States), 59 (all Attorneys). They are now ripe for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, I recommend that the Court allocate the Fund as follows:

| | |
|---|---|
| Attorney Mitchell | $211,736.97 |
| Attorney Larsen | $5,350.00 |
| Attorney Roy | $8,235.00 |
| United States | $24,678.03 |

| | |
|---|---|
| Transamerica | $0[3] |
| Paula Caramadre | $0 |

## I. BACKGROUND[4]

The facts pertinent to the allocation of the Settlement Fund are essentially undisputed. They begin with Mr. Caramadre's guilty plea, entered on November 19, 2012, to one count of Wire Fraud and one count of Conspiracy to Commit Offenses Against the United States. U.S. SUF ¶ 1. As part of the criminal sentence imposed on February 3, 2014, the Court ordered that he make restitution to victims of $46,330,077.61. Id. ¶ 2; Caramadre, 2014 WL 409336, at *1, *5. Mr. Caramadre challenged the restitution order but, in 2015, it was affirmed on appeal. Caramadre, 807 F.3d at 377-79. On March 14, 2014, the United States perfected its restitution lien by recording it at the Cranston Office of Recorder of Deeds. U.S. SUF ¶ 4 & U.S. Ex. A. Pursuant to the Court's 2014 judgment, when there are partial payments of the restitution amount, "each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below." United States v. Caramadre, CR 11-186WES, ECF No. 247 at 5. Since entering the judgment, the Court has never altered its terms; specifically, it has never "specified" that any victim has priority over any other victim. Therefore, the judgment requires that any recovery of Mr. Caramadre's assets must be allocated *pro rata* to all victims.

---

[3] As a victim, Transamerica will ultimately be entitled to receive its *pro rata* share of whatever is awarded to the United States. See United States v. Dreier, 682 F. Supp. 2d 417, 419-20 (S.D.N.Y. 2010) ("Court entered a Second Amended Restitution Order specifying that if restitution is made in partial payments, those payments are to [be] distributed to the victims on a *pro rata* basis according to their loss amounts.").

[4] This background draws primarily from the affidavits and declarations (with exhibits) submitted by the parties. ECF No. 42 ("Roy Aff."); ECF No. 58 ("Larsen Aff."); ECF No. 59-2 at 1 ("First Mitchell Decl."); ECF No. 59-2 at 13 ("Caramadre Decl."); ECF No. 67 ("Roy Billing" ); ECF No. 74-1 at 1 ("Second Mitchell Decl."); ECF No. 74-1 at 11 ("Joint Larsen/Roy Decl."). It also relies on the statement of undisputed facts filed by the United States. ECF No. 53 ("U.S. SUF").

Transamerica is one of the victims entitled to restitution pursuant to the Court's 2014 order. Caramadre, 2014 WL 409336, at *5. It appears to have perfected[5] its restitution claim by obtaining the requisite abstracts of judgment under 18 U.S.C. § 3664(m)(1)(B), which it filed on April 30, 2014, in a civil matter related to Mr. Caramadre's fraudulent scheme, Western Reserve v. Conreal LLC, C.A. No. 09-470WES, ECF Nos. 162, 163. Transamerica's total restitution claim is $2,012,371.49. Caramadre, 2014 WL 409336, at *5. This represents less than 5% of the total owed to all victims. While the Court had the discretion to direct the allocation of restitution in a manner other than *pro rata*, United States v. O'Connor, 321 F. Supp. 2d 722, 731 n.23 (E.D. Va. 2004) (citing 18 U.S.C. § 3664(i)), no such order has entered in United States v. Caramadre, CR. No. 11-186WES. Rather, as noted, the judgment requires *pro rata* payments to all victims. Further, Transamerica's consolidated civil actions against Mr. Caramadre remain pending; therefore, it is not a judgment creditor. E.g., Western Reserve v. Conreal LLC, C.A. No. 09-470WES.

By the end of 2015, the criminal case was resolved, the restitution order had entered, been affirmed on appeal and recorded by the United States, and Transamerica's entitlement to restitution appears to have been perfected. More than a year later, in February 2017, Ms. Caramadre filed for divorce in the Rhode Island Family Court. U.S. SUF ¶ 8. On July 26, 2017, the Rhode Island Family Court issued its decision pending entry of final judgment; the final divorce judgment issued on October 31, 2017. ECF Nos. 46, 46-1. Based on the Family Court's finding of dependency, Ms. Caramadre's final divorce judgment includes an award of rehabilitative alimony. ECF No. 46-1 at 3.

---

[5] Transamerica's submittal in support of its motion for summary judgment is ambiguous with respect to whether it in fact has perfected its claim; for purposes of the pending motions, I assume without deciding that the Transamerica claim based on the restitution order is perfected.

Mr. Caramadre was not satisfied with the legal work done by his initial criminal defense team, particularly with their advice regarding his guilty plea. Caramadre v. Lepizzera, C.A. No. PC-2016-2146, Complaint (filed May 12, 2016). As a result, in May 2016, acting *pro se*, he filed a malpractice action against the lawyers in Rhode Island Superior Court. Id.; First Mitchell Decl. ¶ 13. In early 2017, with the Superior Court threatening to dismiss the case, and after he had been unable to identify any qualified Rhode Island attorney "willing to take on what was regarded as an unpleasant and unpopular case against two very well-known Providence attorneys," Caramadre Decl. ¶ 7, Mr. Caramadre engaged a New York-based lawyer, Attorney Mitchell,[6] who had been representing Mr. Caramadre in other cases since February 2016. First Mitchell Decl. ¶¶ 6-7, 11-13; Caramadre Decl. ¶¶ 5-8. They did not have a written engagement agreement; based on their prior relationship, Mr. Caramadre understood that Attorney Mitchell would work on the Superior Court case at his established rate of $600 per hour, plus reimbursement for expenses. Caramadre Decl. ¶¶ 8-9.

To act as his local counsel, Mr. Caramadre hired Attorneys Larsen and Roy. Attorney Larsen has a retainer agreement and Attorney Roy has an email from Mr. Caramadre; these confirm that their engagement entitled them to be paid at the rate of $250 per hour.[7] Larsen Aff. ¶ 3 & at 8; Roy Aff. ¶¶ 2, 8. They agreed to serve as local counsel only because Attorney

---

[6] Attorney Mitchell practices law primarily in New York, where he has been admitted to the state bar for over forty-three years. First Mitchell Decl. ¶ 3. A seasoned litigator, he has focused on and excelled at civil and criminal litigation at the trial and appellate levels. Id. ¶¶ 8-10. Attorney Mitchell submitted persuasive declarations from three attorneys who practice outside of Rhode Island, have worked with him as co-counsel in several cases and averred to the high quality of his work. First Mitchell Decl. Exs. C, D, E. He also provided a declaration from former Rhode Island Supreme Court Justice Robert G. Flanders, Jr., who opined that Attorney Mitchell's $600 rate is reasonable by Rhode Island standards for a senior litigation lawyer serving as lead counsel in a complex civil case. Second Mitchell Decl. Ex. B. No party has submitted any sworn statements to contravene this factual proffer.

[7] Attorneys Larsen and Roy filed affidavits from local attorneys attesting to the reasonableness of the $250 rate based on their respective qualifications. Larsen Aff. at 9; ECF No. 60. No party has submitted any sworn statements to contravene this factual proffer.

Mitchell was willing to shoulder full responsibility for handling the case; neither was willing to act as lead on the case due to its unpopular nature and unusual complexity. Joint Larsen/Roy Decl. ¶¶ 3-6; see Caramadre Decl. ¶ 7.[8]

On April 28, 2017, the Attorneys, with Attorney Mitchell consistently in the lead, filed a second amended three-count complaint. Caramadre v. Lepizzera, C.A. No. PC-2016-2146, Second Amended Complaint (filed Apr. 28, 2017). In a bench decision on November 3, 2017, Judge Vogel dismissed one count against one of the two defendants. Following this relatively minor setback, Attorney Mitchell, assisted by local counsel, participated in court-annexed mediation; as a result of the mediation held in June 2018, the case settled on July 25, 2018, and was dismissed with prejudice on September 18, 2018.

From the time he started until the Superior Court case settled, Attorney Mitchell worked for many hours at his rate of $600; his total unpaid fees and expenses (largely for travel) amount to $211,736.97. First Mitchell Decl. ¶ 20. For work on the Superior Court malpractice case, Attorney Larsen has unpaid invoices of $5350 based on her rate of $250, while Attorney Roy has outstanding invoices in the amount of $8175[9] for time at $250 per hour and for one expense ($60 for a transcript). Attorneys Mitchell and Larsen filed their notices of Attorneys' liens in Caramadre v. Lepizzera, C.A. No. PC-2016-2146, on June 26, 2018. Attorney Roy filed the

---

[8] The United States and Transamerica argue that the willingness of Attorneys Larsen and Roy to be local counsel raises a fact dispute about whether either or both could have handled the entire case at their lower rates. They present no admissible evidence to buttress this argument. All of the individuals with first-hand knowledge of the engagement have averred that the argument is unfounded. I recommend that the Court ignore this unsupported argument.

[9] Attorney Roy's initial filing (ECF No. 42) is not consistent with the fees he sought in his later filed itemized statement (ECF No. 67) – the earlier filing is higher by $1000. To solve this problem, I based the calculation in the text only on the second iteration (ECF No. 67), mindful that it is itemized and was filed in response to my order mandating the filing of documents to support "the amount of reasonable compensation." Text Order of Aug. 23, 2019.

notice of his attorney lien on August 6, 2018, in this case when it was still in state court.  ECF No. 3 at 52.

One of the parties in the Superior Court malpractice case was Ms. Caramadre, who intervened to assert her claim to any assets Mr. Caramadre might receive.  Caramadre v. Lepizzera, C.A. No. PC-2016-2146, Motion to Intervene (filed Feb. 5, 2018).  Ms. Caramadre argues that she also participated in the malpractice action by paying a total of $47,500 to the Attorneys.  ECF No. 40 at 6.  After the Attorneys stated at the hearing that they dispute the accuracy of that assertion and that their liens are net of any payments, Ms. Caramadre submitted nothing to support her claim.  Her final filing in this case states that she "has no objection to the payment of the priority attorney liens and claims resulting from the successful litigation in the Providence County Superior Court."  ECF No. 80 at 1.

On July 31, 2018, this interpleader case was filed in the Superior Court; on August 21, 2018, the United States removed it to this Court.  In addition to their liens for work and expenses arising from the Superior Court case, all three Attorneys also ask to be paid out of the Settlement Fund for work performed on this interpleader action.  Specifically, Attorney Mitchell seeks $59,550.16 in fees and expenses for the interpleader, Second Mitchell Decl. ¶ 12, while Attorney Larsen's itemized invoice establishes that her work on the interpleader totals $1700, ECF Larsen Aff. at 5, and Attorney Roy's itemized billing demonstrates that interpleader time amounts to $1250.[10]  Roy Billing at 2.

---

[10] For Attorney Mitchell, I rely on his submission of separate (and detailed) itemized invoices for each of the two cases.  The calculations for Attorneys Larsen and Roy are based on the undisputed content of their itemized time entries.  Having reviewed them carefully, Court finds that Attorney Larsen's time through the end of July 31, 2018, was spent on the malpractice action, and the time during August 2018 was spent on the interpleader action.  Larsen Aff. at 5.  For the same reason, Court finds that Attorney Roy's time through the end of July 31, 2018, was spent on the malpractice action, and the time during August and October 2018 was spent on the interpleader action.  As noted infra n.14, Attorney Roy's billings were also reduced $600 (total of $1850) for time spent on garnishment proceedings against Mr. Caramadre in federal court.  Roy Billing at 1.

Attorney Mitchell seeks interest at the Rhode Island statutory rate (12%) on all unpaid amounts running from when his charging liens became choate on July 25, 2018 (the day the Superior Court malpractice case was settled).  He claims that this interest is incorporated into the charging lien by operation of Rhode Island law.

## II.     STANDARD OF REVIEW

In ruling on a Fed. R. Civ. P. 56 motion for summary judgment, the court must examine the record evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000) (citing Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)).  There are no trial-worthy issues unless there is competent evidence to enable a finding favorable to the nonmoving party.  Goldman v. First Nat'l Bank of Bos., 985 F.2d 1113, 1116 (1st Cir. 1993).  That is, the nonmoving party cannot rest on its pleadings, but must "set forth specific facts demonstrating that there is a genuine issue for trial" as to the claim that is the subject of the summary judgment motion.  Oliver v. Digital Equip. Corp., 846 F.2d 103, 105 (1st Cir. 1988).  To avoid judgment, the proffer must be supported by evidence of a caliber that would be admissible at trial.  Garside v. Osco Drug, Inc., 895 F.2d 46, 49 (1st Cir. 1990).

Summary judgment is the appropriate vehicle for disposition of an interpleader case, as long as the underlying material facts are established by more than unverified pleadings and are undisputed.  In re Enron Corp., Civil Action No. H-01-3624, 2006 WL 1663383, at *5, *10 (S.D. Tex. June 12, 2006).  Once the rights of the claimants are adjudicated, judgment enters in favor of the claimants who are lawfully entitled to the stake.  Wachovia Bank, N.A. v. Tien, 534 F.

---

Attorney Roy's total reduction of $1850 includes a $600 cutback for 2.4 hours billed on September 7 and October 7, 2017, for work related to garnishment proceedings against Mr. Caramadre in federal court.  Roy Billing at 1.

Supp. 2d 1267, 1284-85 (S.D. Fla. 2007).  Claim priority is determined as the parties' rights existed at the time the interpleader action was commenced.  Id.

While federal law applies to questions of jurisdiction and procedure in federal court interpleader actions, the substantive law to be applied is dependent on the nature of the claim to the *res*.  Here, the restitution order functions as a federal tax-type lien, as to which "federal law determines the priority."  Progressive Consumers Fed. Credit Union v. United States, 79 F.3d 1228, 1234 (1st Cir. 1996); see Litton Indus. Automation Sys., Inc. v. Nationwide Power Corp., 106 F.3d 366, 371 (11th Cir. 1997) ("Federal law, not state law, governs a priority contest between a security interest and a federal tax lien.").  Otherwise, the federal court applies the law of the forum state.  Tien, 534 F. Supp. 2d at 1284 ("[F]ederal interpleader statute is merely a special brand of diversity jurisdiction and the determination of who had the right to an interpleader fund is made under the law of the forum state.").

## III.    LAW AND ANALYSIS

### A.    Entitlement of the Attorneys to the Settlement Fund

All parties agree with the legal proposition that some portion of the Attorneys' charging liens have super-priority with respect to the Settlement Fund pursuant to 26 U.S.C. § 6323(b)(8).[11]  However, the United States and Transamerica (but not Ms. Caramadre or Mr.

---

[11] Section 6323(b)(8) provides in relevant part:

> Even though notice of a lien imposed by section 6321 has been filed, such lien shall not be valid –
> . . . With respect to a judgment or other amount in settlement of a claim or of a cause of action, as against an attorney who, under local law, holds a lien upon or a contract enforce[ea]ble against such judgment or amount, to the extent of his reasonable compensation for obtaining such judgment or procuring such settlement, except that this paragraph shall not apply to any judgment or amount in settlement of a claim or of a cause of action against the United States to the extent that the United States offsets such judgment or amount against any liability of the taxpayer to the United States.

26 U.S.C. § 6323(b)(8).

Caramadre) vigorously contest the amount sought by the Attorneys ($288,422.13, plus interest at 12% running from July 25, 2018, until the lien is paid).  Specifically, they argue that the Attorneys should not have super-priority for work on the dismissed breach of contract claim or for time spent in consultation with Ms. Caramadre's lawyer or for research related to federal interpleader; that Attorney Mitchell's rate is higher than what is reasonable and is justified neither by the need to hire out-of-state counsel nor by the complexity of the Superior Court case; that the total amount of the Attorneys' liens is blatantly unreasonable because it exceeds the size of the Settlement Fund; that there is no super-priority for whatever interest may be applicable; and that none of the fees accrued in the interpleader case are entitled to super-priority.

To benefit from the super-priority protection of § 6323(b)(8), an attorney must establish: "(1) that a fund was created out of a judgment or settlement of a claim; (2) that local law would recognize the existence of a lien; and (3) that the amount of the lien reflects the extent to which [the attorney's] efforts reasonably contributed to the award."  United States v. Murray, 963 F. Supp. 52, 56 (D. Mass. 1997); see Barnett v. D'Amico, Civil Action No. 10-1928, 2014 WL 4402682, at *4 (E.D. La. Sept. 5, 2014) (same).  Although the federal restitution order has the priority of a federal tax lien against Mr. Caramadre's property, 18 U.S.C. § 3613(c); United States v. Brosseau, 446 F. Supp. 2d 659, 661 (N.D. Tex. 2006), and normally enjoys the benefit of the well-settled principle that "first in time is the first in right," United States v. City of New Britain, 347 U.S. 81, 85 (1954), § 6323(b)(8) creates an exception to the first-in-time rule.   That is, if they qualify for § 6323(b)(8) protection, the Attorneys' liens are entitled to super-priority despite the undisputed fact that they arose after the restitution order entered.

There is no dispute that the Attorneys have met the first of the § 6323(b)(8) elements. Settlement of the Superior Court case unambiguously resulted in the Fund of $250,000.  Cont'l Cas., 2019 WL 3577775, at *2.

The second § 6323(b)(8) element – a lien whose existence is recognized by local law – is a little more complicated.  With deep roots in the common law and in equity, there is no question that Rhode Island law has long recognized the priority of attorneys' charging liens.  R.I. Gen. Laws §§ 9-3-1 through 9-3-3; see In re Robert E. Derecktor of R.I., Inc., 152 B.R. 14, 16-17 (Bankr. D.R.I. 1993) (discussing Rhode Island statutory scheme, pursuant to which, once case settled, attorneys' liens attached to settlement fund, were perfected, and were superior to prior liens against fund).  And there is no dispute that the Attorneys have taken the legally required steps to perfect their charging liens.  The tricky part is Attorney Mitchell's argument that their liens include statutory interest.  Rhode Island's statute creating entitlement to interest in civil actions limits its applicability to "any civil action in which a verdict is rendered or a decision [is] made for pecuniary damages."  R.I. Gen. Laws § 9-21-10(a) ("This section shall not apply until entry of judgment or to any contractual obligation where interest is already provided.").  It does not create the right to interest when the parties avoid a "verdict" or "decision" by reaching a settlement; and the statute clearly limits interest to a judgment awarding money damages. Andrews v. Plouff, 66 A.3d 840, 843 (R.I. 2013).  With respect to the second § 6323(b)(8) element, I find that, while the Attorneys clearly have established charging liens that are recognized by local law, those liens do not include statutory interest pursuant to R.I. Gen. Laws § 9-21-10(a).[12]

---

[12] By contrast, no party disputes that the expenses related to the litigation of the Superior Court malpractice case are folded into the Attorneys' liens and are entitled to the same super-priority as the fees to which they relate.  It is settled that such expenses are covered by an attorney's lien pursuant to R.I. Gen. Laws § 9-3-1.  See In re Robert E. Derecktor, 152 B.R. at 17 n.3 (allowing attorney charging lien to include contingency fee "inclusive of all time and

The third element – "the amount of the lien reflects the extent to which [the attorney's] efforts <u>reasonably</u> contributed to the award" – is where things get even stickier. <u>Murray</u>, 963 F. Supp. at 56 (emphasis supplied). The Attorneys argue that Rhode Island law expansively allows them to recover the fees themselves and the fees to collect the fees, as well as that reasonableness is an irrelevant consideration because the applicable Rhode Island statutes do not limit the lien based on what a court might find reasonable. Whether they are right or not that state law on attorney's liens ignores reasonableness,[13] they overlook that federal law – specifically 26 U.S.C. § 6323(b)(8) – controls what fees receive super-priority and specifically allows super-priority protection only for fees that the Court finds to be reasonable. <u>See e.g.</u>, <u>Leathers v. Leathers</u>, 856 F.3d 729, 765-66 (10th Cir. 2017) (section 6323(b)(8) requires court to analyze reasonableness so as to limit what fees are entitled to super-priority); <u>Blimpie Int'l, Inc. v. Peacox Ventures, LLC</u>, No. C-00-1510 VRW, 2001 WL 1155076, at *2 (N.D. Cal. Sept. 19, 2001) ("The exception is limited by its terms 'to the extent of [the attorney's] reasonable compensation for obtaining such judgment or procuring such settlement.'") (quoting 26 U.S.C. § 6323(b)(8)); <u>Markham v. Fay</u>, Civ. A. No. 91-10821-Z, 1993 WL 160604, at *7-8 (D. Mass. May 5, 1993) (attorneys' liens take precedence over federal tax lien if fees are reasonable). Thus, only a lien for amounts that are "reasonable" is entitled to super-priority.

---

expenses"). And under § 6323(e) of the federal statute, super-priority extends to reasonable expenses actually incurred. 26 U.S.C. § 6323(e)(3); <u>GTE Directories Corp. v. Ad-Vantage Tel. Directory</u>, 892 F. Supp. 254, 257 (M.D. Fla. 1995) (awarding expenses). Therefore, all expenses associated with Attorney Mitchell's travel to Rhode Island for the malpractice case and with Attorney Roy's $60 payment for a Superior Court transcript are appropriately included in the Attorneys' liens arising from work on the Superior Court action.

[13] While not material to my analysis because "reasonableness" is an inquiry mandated by § 6323(b)(8), I note that it is not accurate to posit that Rhode Island law permits the enforcement of a lien based on an unreasonable attorney's fee. Rule 1.5 of the Rhode Island Rules of Professional Conduct constrains a lawyer's right to charge or collect "an unreasonable fee or an unreasonable amount for expenses." R.I. R. Prof. Conduct 1.5(a); <u>see Leathers v. Leathers</u>, 856 F.3d 729, 764-66 (10th Cir. 2017) (apart from requirement of § 6323(b)(8), under state applicable rules of professional conduct, fees must be reasonable). Thus, a lien based on a fee that is "unreasonable" within the meaning of R.I. Rule 1.5 would not be one "local law would recognize." <u>Murray</u>, 963 F. Supp. at 56.

Before turning to reasonableness, I linger on the third § 6323(b)(8) element's requirement that work underlying the lien must have contributed to the procurement of the Fund. 26 U.S.C. § 6323(b)(8) (super-priority limited to lien "for . . . procuring such settlement"). Because the chief aim of § 6323(b)(8) "is to provide an incentive to attorneys to enhance the value of a taxpayer's property, which would ultimately increase the government's revenue collection," Leathers, 856 F.3d at 764 n.25, § 6323(b)(8) is strictly construed to "provide[] superpriority for an attorney's lien only to the extent the lien covers compensation for efforts that helped obtain a judgment from which the government can satisfy a tax debt." Id. at 765; Hussain v. Bos. Old Colony Ins. Co., 311 F.3d 623, 644-45 (5th Cir. 2002). Consistent with these principles, courts decline to extend super-priority status to fees incurred to recover the charging lien. Hussain, 311 F.3d at 645. To hold otherwise would not only be contrary to the express language of § 6323(b)(8), but also would decrease the client's "potential recovery to add to [the attorney's] take" and "reduce the property available to satisfy the tax lien, [which] . . . is diametrically opposed to that intended by Congress in enacting § 6323(b)(8)." Id.

In opposition to this proposition, the Attorneys cite cases that permit the recovery of fees to recover fees in other contexts. E.g., Easley v. Collection Serv. of Nev., 910 F.3d 1286, 1292 (9th Cir. 2018) (under Bankruptcy Code, court may award reasonable attorneys' fees incurred in litigating fee award); M.D. v. N.Y.C. Dep't of Educ., 17-CV-2417 (JMF), 2018 WL 4853032, at *1 (S.D.N.Y. Oct. 5, 2018) (under Individuals with Disabilities Education Act, court may award "fees on fees"). However, they have cited nothing to rebut the operative proposition – which is clear from the words used in § 6323(b)(8) and the cases that have construed it – that super-priority protects only the work done to procure the Settlement Fund. Super-priority is not

applicable to the Attorneys' work or expenses arising from the litigation to collect the fees in this interpleader action.

The practical ramifications of this holding are that Attorney Mitchell may not have super-priority for the $59,550.16 he requested in his supplemental filing, while the super-priority fees for Attorneys Larsen and Roy stop on July 31, 2018, reducing their totals by $1700 and $1850 respectively.[14]  See n.10 *supra*.  It does not result in exclusion of pre-settlement hours billed regarding interpleader research because the Attorneys have demonstrated that this work was related to the procurement of the Settlement Fund.  Similarly, time spent conferring with Ms. Caramadre's counsel should not be excluded because it was done in response to her motion to intervene in the Superior Court case and constitutes work to procure the Settlement Fund.  It is important to highlight that this holding does not mean that fees from litigating the interpleader action are never recoverable.  Instead, it means only that they are not entitled to super-priority status under § 6323(e)(8).

The last issue to be considered pursuant to § 6323(e)(8) is whether the amount of the Attorneys' liens meets the super-priority standard of reasonableness.  Ultimately, this is a question of law, although the Court "may consider factors such as the experience and reputation of the attorney, the amount of time spent, the rates charged by attorneys providing similar services in the area, and the result obtained."  Murray, 963 F. Supp. at 57.  This reasonableness inquiry is not governed by the traditional lodestar framework courts routinely employ when considering the fees to award to a prevailing party.  Because 26 U.S.C. § 6323(e)(8) is not a fee-shifting statute, the Court's starting point is local law for recognizing the attorney's lien, and then its own examination of reasonableness.  See, e.g., Vitalone v. City of New York, 395 F.

---

[14] Attorney Roy's total reduction of $1850 includes a $600 cutback for 2.4 hours billed on September 7 and October 7, 2017, for work related to garnishment proceedings against Mr. Caramadre in federal court.  Roy Billing at 1.

Supp. 3d 316, 324 (S.D.N.Y. 2019) ("[I]n determining the proper allocation of fees in the case of a charging lien[,] . . . courts need not engage in the 'lodestar' analysis."); Salvini v. Flushing Supplies Corp., 137 F.R.D. 190, 194 (D. Mass. 1991) ("The court is not automatically to adopt a 'lodestar' approach in determining a fair and reasonable fee under the attorney's lien statute.").

Most critical to the reasonableness determination in this case is the unrebutted declaration of Mr. Caramadre, who was Attorney Mitchell's client. He avers that the terms of the engagement were based on time billed at the agreed-upon rate; he confirms that the engagement contemplated that Attorney Mitchell's rate would be $600, as well as that the amount of his lien is consistent with the terms of the engagement. As to the latter, Mr. Caramadre swears that he has reviewed all of Attorney Mitchell's billing records and considers the amount billed to be accurately calculated and not just reasonable, but "very conservative" in light of the work actually done, as well as that he is fully satisfied with the result. Caramadre Decl. ¶¶ 8-11 ("I consider the fact that through Mr. Mitchell's efforts I was able to obtain a settlement of $250,000, to represent a very successful resolution to this case."). In such a circumstance, when the specific fee is supported by the acquiescence of the client that it is consistent with the terms of the engagement and is fair and reasonable, the Court should defer to such evidence as persuasive proof that the fee is "reasonable" as a matter of law. GTE Directories, 892 F. Supp. at 257.[15]

---

[15] During the hearing, I asked the Attorneys why one-third of the Settlement Fund would not be more "reasonable." In light of the Caramadre declaration, I do not recommend that the Court adopt such an approach; it would be appropriate only if this engagement had been contingent. Ultimately, "reasonableness" in a case based on an engagement to pay for time at an agreed-upon rate must rest on the contractual arrangement between the client and the lawyer. GTE Directories, 892 F. Supp. at 257.

The principal attack[16] on reasonableness marshaled by the United States and Transamerica is focused on the proportionality of the Attorneys' liens, especially that of Attorney Mitchell, whose fees and expenses are nearly as large as the Settlement Fund itself, and (relatedly) on Attorney Mitchell's $600 hourly rate. However, the United States and Transamerica ignore the contractual terms of the Mitchell/Caramadre engagement, which are described under oath by both attorney and client. Instead, the United States and Transamerica focus their reasonableness arguments on lodestar principles that are not applicable. E.g., Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

Otherwise, with no competent evidence to support the contentions, they argue that the rate is excessive for Rhode Island and that nothing about the Superior Court case warranted out-of-state counsel with specific expertise. This *ipse dixit* is legally insufficient to raise the specter of a trial-worthy issue in light of Attorney Mitchell's unrebutted proffer of competent and admissible evidence establishing the complexity and difficulties of the case (which render reasonable Mr. Caramadre's selection of an out-of-state attorney charging $600 per hour) and the reasonableness of the total amount billed. To summarize, this evidence consists not just of Attorney Mitchell's own sworn statement, but also comprises a declaration from a highly regarded disinterested local attorney; declarations from three non-Rhode Island attorneys; the critical declaration of the client, Mr. Caramadre, who specifically averred that the nature of the case required him to seek out-of-state counsel and that the rate and amount billed were reasonable and consistent with their agreement; and the joint declaration of Attorneys Larsen and Roy who both stated that they had refused to do more than fill the limited role of local counsel

---

[16] The United States also asserts that the Attorneys' fees should be reduced by 25% because the Superior Court dismissed one breach of contract Count against one defendant. I reject this lodestar-based argument. It is clear that the Superior Court malpractice action involved a "common nucleus of operative facts," rendering it "impractical or unjust to exclude" time spent on unsuccessful claims. Matter of Schiff, 684 A.2d 1126, 1133 (R.I. 1996).

because the case posed complex legal issues and the nature of the case as a malpractice lawsuit against well-regarded attorneys made it unpopular.  See Williams v. Poulos, 54 F.3d 764, at *4 (1st Cir. 1995) ("[O]ut-of-town rates may be applied . . . when the case is an undesirable one which capable attorneys within the forum community are not willing to prosecute or defend."); Maceira v. Pagan, 698 F.2d 38, 40 (1st Cir. 1983) ("[I]f the client needs to go to a different city to find that specialist, he will expect to pay the rate prevailing in that city.  In such a case, there is no basis for concluding that the specialist's ordinary rate is unreasonably high.").  Notably, Ms. Caramadre (who was directly involved in the litigation) does not quibble with the reasonableness of Attorney Mitchell's rate or his total fees.

Based on the foregoing, I recommend that the Court reject super-priority for the Attorneys' liens to the extent that they seek to recover for work on this interpleader action or statutory interest and, accordingly, deny their motions.  Otherwise, I find that the Attorneys' liens for work on the Superior Court malpractice case seek reasonable compensation for procuring the Settlement Fund and recommend that the Court grant their summary judgment motions with the finding that the following total amounts of fees and expenses are entitled to super-priority pursuant to § 6323(b)(8):

| | |
|---|---|
| Attorney Mitchell | $211,736.97 |
| Attorney Larsen | $5,350.00 |
| Attorney Roy | $8,235.00 |

If this recommendation is adopted, it leaves $24,678.03 remaining in the $250,000 Settlement Fund to be allocated to other claimants.

### B.   Entitlement of United States to the Settlement Fund

With its arguable waiver of entitlement to the Settlement Fund set aside by my memorandum and order, ECF No. 81, the claim of the United States to priority derives from the

Court's final restitution order, which issued on February 25, 2014, and was perfected on March 14, 2014.  U.S. SUF ¶¶ 1, 4 & U.S. Ex. A; Caramadre, 2014 WL 409336, at *1, *5.  As such, its priority rests soundly on the lien's character as a federal tax lien.  18 U.S.C. § 3613(c); see United States v. Beulke, 892 F. Supp. 2d 1176, 1181 (D.S.D. 2012) ("Liens to pay restitution are treated like tax liens" and are "effective against every interest in property accorded a taxpayer by state law.") (quoting United States v. Kollintzas, 501 F.3d 796, 802 (7th Cir. 2007)).  In addition, in light of its "first-in-time" status vis-à-vis other claimants (except for the Attorneys, whose super-priority is unaffected by the "first-in-time" rule), the United States' restitution lien precedes the claims of both Transamerica, whose abstracts of judgment were obtained and filed on April 30, 2014, and Ms. Caramadre, whose final divorce judgment issued on October 31, 2017.  Brosseau, 446 F. Supp. 2d at 661-62 (restitution order that vested before claimants perfected their child support liens has priority).  And whatever the United States recovers must be allocated pursuant to 18 U.S.C. § 3612(c) and as required by the Court in the 2014 final judgment.  That is, the portion of the Settlement Fund allocated to the United States must be distributed *pro rata* to all victims of Mr. Caramadre's criminal fraud and not to just one victim, Transamerica.  See United States v. Mueffelman, 400 F. Supp. 2d 368, 386 (D. Mass. 2005), aff'd, 470 F.3d 33 (1st Cir. 2006) (ordering *pro rata* distribution) (citing 18 U.S.C. 3664(i)).

Based on the foregoing, I recommend that the Court grant the summary judgment motion of the United States seeking an order permitting it to assert its restitution lien over the remainder of the Settlement Fund ($24,678.03) pursuant to the requirements of the judgment in Caramadre, 2014 WL 409336, at *1, *5.

### C.   Entitlement of Transamerica to the Settlement Fund

Transamerica does not stand in the same shoes as the United States vis-à-vis the

restitution order or the Settlement Fund. Enforcement of the Mandatory Victim Restitution Act

("MVRA") is governed by 18 U.S.C. § 3663, which provides the United States and the victims

different enforcement mechanisms for collecting restitution. Compare 18 U.S.C. §

3664(m)(1)(A)(i)-(ii) (enforcement of order of restitution by United States), with 18 U.S.C. §

3664(m)(1)(B) (establishing abstract of judgment protocol for victim named in restitution order).

As a victim owed restitution, Transamerica is required to obtain an abstract of judgment and to

perfect its lien by following various other procedures. See 18 U.S.C. § 3664(m)(1)(B); Schultz

v. United States, 594 F.3d 1120, 1123 (9th Cir. 2010) ("Section 3664(m)(1)(B), however,

prescribes only one method by which victims may enforce a restitution order. The negative

implication is that Congress meant to prohibit enforcement in any other way."). While it has

done so, the timing places its priority behind the United States, whose restitution-based lien has

first-in-time precedence. City of New Britain, 347 U.S. at 85 (under federal law, lien that is

"first in time is the first in right"). And while it could have sought priority in the allocation of

the restitution award based on its substantial assistance to the United States in connection with

the criminal prosecution, it has not done so. See O'Connor, 321 F. Supp. 2d at 731 n.23.

Therefore, as of the day this interpleader action was filed, the restitution order in the criminal

judgment had priority over perfected claims of the victims like Transamerica; it requires the

Attorney General to allocate any recovery to all victims *pro rata* in accordance with its terms.

Transamerica cites to nothing that would give it priority to the Settlement Fund over the

restitution-based claim of the United States (and therefore the other victims). Instead, its

argument for priority depends on the Court's refusal to excuse the United States' waiver by its

failure timely to comply with the Text Order of September 5, 2018. However, that ship has now

sailed in that the Court has found excusable neglect and allowed the United States to file its out-of-time motion. Accordingly, I recommend that Transamerica's motion for summary judgment be denied and that it recover nothing from the Settlement Fund.

### D.      Entitlement of Paula Caramadre to the Settlement Fund

Ms. Caramadre's argument for priority depends on the success of her collateral attack on the restitution order entered in 2014 as part of her former husband's sentence. She contends that the restitution order should be vacated based on the Court's failure to calibrate it to consider the financial needs and earning ability of the defendant and his dependents pursuant to 18 U.S.C. § 3664(a) and (f)(2)(C). There are several serious problems with this argument. First, the sentence was imposed in 2014, affirmed on appeal and is years past the window for a collateral attack. See United States v. Lopez, No. 1:14-cv-00128-SKO, 2015 WL 769722, at *2 (E.D. Cal. Feb. 23, 2015) ("If the parties believe there is any defect in the judgment warranting a modification of the sentence, that issue must be taken up on appeal.") (citing United States v. Stump, 914 F.2d 170, 172 (9th Cir. 1990)). Second, she is not the defendant in the case; she cites nothing to suggest that a defendant's family member has standing to seek to vacate the final judgment in the criminal case. It is well-settled that "a non-party lacks standing to appeal a restitution order, because a non-party lacks 'a judicially cognizable interest' in a criminal defendant's sentence, and is thus not aggrieved by the defendant's sentence." United States v. Stoerr, 695 F.3d 271, 277-78 (3d Cir. 2012); see also United States v. Grundhoefer, 916 F.2d 788, 791 (2d Cir. 1990) (holding that trustee representing defrauded creditors was a "[c]ollateral individual[ ]" without standing to mount a challenge to defendants' criminal restitution orders that provided an award to other creditors). And third, her argument largely depends on cases decided in the 1990s, before the MVRA was amended to eliminate judicial discretion to adjust the restitution amount

to reflect the needs of dependents. As the Seventh Circuit explained in United States v. Day, 418 F.3d 746 (7th Cir. 2005):

> Under the old version of § 3664, courts were to consider the financial circumstances of the defendant both "in determining whether to order restitution" and also in determining the "*amount* of such restitution." 18 U.S.C. § 3664(a) (1995) (emphasis added). However, the new § 3663(a)(1)(B) requires courts to consider these factors only in determining whether to order restitution; all reference to the amount of restitution has been omitted.

Id. at 756-57 (emphasis in original). Since the amendment, the MVRA removed any discretion that the district court had under prior law to fix the amount of the restitution award based upon the defendant's economic circumstances. Id. at 757.

Apart from her futile challenge to the Court's restitution order, Ms. Caramadre's claim for priority is based on the alimony award in her final judgment of divorce. While that may allow her to take an asset like the Settlement Fund before Mr. Caramadre can recover anything, it does not help her in this case. United States v. Corso, Criminal Action No. 3:05-CR-00105 (JCH), 2016 WL 3349213, at *5 (D. Conn. June 14, 2016) ("With respect to alimony arrearages, the answer is clear: as noted above, section 3613(a)(1) does not provide [priority.]"). Nor does Ms. Caramadre have a preexisting child-support order, to which the MVRA might have afforded priority. See id. ("[P]reexisting child support orders are, in fact, given priority by operation of section 3613(a)(1).").

Based on the foregoing, I recommend that Ms. Caramadre's motion for summary judgment seeking an order of priority be denied and that the Court award her nothing from the Settlement Fund.

## IV. CONCLUSION

Based on the foregoing, I recommend that the Court dispose of the pending summary judgment motions and filings to be treated as summary judgment motions as follows: the

motions of all Attorneys (ECF No. 59), Attorneys Mitchell and Larsen (ECF No. 39) and

Attorney Roy (ECF No. 42) are granted in part and denied in part; the motion of the United

States (ECF No. 52) is granted in part and denied in part; and the motions of Transamerica (ECF

No. 38) and Ms. Caramadre (ECF No. 40) are denied.  Because this recommendation addresses

all of the claimants' asserted entitlements to the Fund, I further recommend that the Court

dismiss Continental (the only remaining Plaintiff) and enjoin the claimants from bringing any

action or proceeding in any form against Continental, arising out of and in connection with the

Interpleader Funds.  Cont'l Cas., 2019 WL 3577775, at *3.

      Accordingly, I recommend that the Court enter final judgment terminating this case and

directing the Clerk[17] to distribute the Settlement Fund in the registry of the Court pursuant to

DRI LR Cv 67 as follows:

| Attorney Mitchell | $211,736.97 |
|---|---|
| Attorney Larsen | $5,350.00 |
| Attorney Roy | $8,235.00 |
| United States | $24,678.03 |
| Transamerica | $0 |
| Paula Caramadre | $0 |

      I further recommend that any interest that has accrued on the Funds while they were

deposited in the Court registry be distributed to the claimants in proportion to the amount they

are awarded from the principal:

| Attorney Mitchell | 84.70% |
|---|---|
| Attorney Larsen | 2.14% |
| Attorney Roy | 3.29% |
| United States | 9.87% |
| Transamerica | 0% |
| Paula Caramadre | 0% |

---

[17] To accomplish disbursement, I recommend that the parties be informed that they must provide the Clerk the
information necessary to release the Funds from the Court registry (e.g., tax identification numbers).

Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court within fourteen (14) days of its receipt. <u>See</u> Fed. R. Civ. P. 72(b)(2); DRI LR Cv 72(d). Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district judge and the right to appeal the Court's decision. <u>See</u> <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 31, 2020